UNSATISFIED CLAIM AND JUDGMENT FUND
BOARD *v.* BOWMAN, ET AL.

[No. 214, September Term, 1967.]

* * *

BRAMBLE *v.* UNSATISFIED CLAIM AND
JUDGMENT FUND BOARD

[No. 297, September Term, 1967.]

*Decided May 9, 1968.*

The causes were argued before HAMMOND, C. J., and HORNEY, McWILLIAMS, FINAN and SINGLEY, JJ.

*Thomas J. Scanlon* and *William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Howard J. McGrath,* on the brief, for appellant in No. 214.

*J. Robert Carey* for appellees in No. 214.

*L. Edgar Brown* and *Marvin H. Smith* for appellant in No. 297.

*William E. Brannan, Assistant Attorney General,* and *Raymond S. Smethurst, Jr.,* with whom were *Adkins, Potts & Smethurst* and *Francis B. Burch, Attorney General,* on the brief, for appellee in No. 297.

HORNEY, J., delivered the opinion of the Court.

The question presented by these appeals concerns the maximum amount recoverable from the Unsatisfied Claim and Judgment Fund on judgments obtained after April 1, 1965 for damages arising out of motor vehicle accidents occurring prior to that date.

Chapter 81 of the Laws of 1964, effective April 1, 1965, repealed and reenacted with amendments §§ 119(3)(a), 122, 134(b), 162(a) and 172 of Article 66½ (1967 Repl. Vol.) so as to increase the mandatory minimum amounts of financial responsibility required for bodily injuries or death under the

motor vehicle laws and to make corresponding changes in the amounts payable therefor under the UC&JF law. In essence the amendments increased the maximum amounts payable from $10000 to $15000 on account of injury or death of one person in any one accident and from $20000 to $30000 on account of injury or death of more than one person in any one accident.

In a case [1] in the Circuit Court for Montgomery County (Moorman, J.), the UC&J Fund (the fund) was directed to pay each of the injured persons the maximum amount payable under § 162 of Article 66½ as of the time of trial. In a case [2]

---

[1]. This action was brought by Frances and Lewis Bowman, plaintiffs, against Thomas Thornton Jr. and Morris Anglin Jr., defendants, for injuries arising out of a three-vehicle-collision that occurred on July 27, 1964, in which the uninsured defendant struck the rear of the vehicle of the insured defendant and then crossed over to the left side of the highway and struck the vehicle of the plaintiffs head on. The Bowmans promptly filed notice of intention to file a claim against the fund, pursuant to § 154 of Article 66½, and sued both defendants. The trial, held on December 6, 1965, resulted in separate judgments for Frances and Lewis Bowman for $27000 and $15000, respectively, against the uninsured defendant. Subsequently, contending that each was due $14900 (the maximum payable under § 162 as it existed at the time of trial), the Bowmans filed a petition with the fund board for payment of the judgments pursuant to § 158. The board, contending that each petitioner was entitled to $9900 (the maximum payable under § 162 on the date of the accident), declined to pay the claims in full and the Bowmans sued the fund board.

[2]. This action was brought by David and Shirley Bramble, plaintiffs, against Donald Thompson, James Lee and Ronald Truster, defendants, for injuries arising out of an accident that occurred on March 27, 1965, when the automobile (in which the Brambles were passengers) operated by Ronald Truster collided with an automobile operated by Donald Thompson and owned by James Lee. The Brambles seasonably filed notice of intention to make a claim against the fund. The trial held on January 4, 1967, resulted in a directed verdict in favor of James Lee and in separate judgments for David and Shirley Bramble for $8000 and $30000, respectively, against Donald Thompson and Ronald Truster. After the trial, the Brambles in their petition for payment of the judgments, requested payment of $7900 to David and $14900 to Shirley, but the fund opposed the petition. Subsequently, David Bramble abandoned his claim and Shirley Bramble sued the fund board for the maximum amount payable under the law as of the time of the trial.

in the Circuit Court for Caroline County (Carter, J. DeW., C. J.), the fund was ordered to pay one of the injured persons the maximum amount payable under § 162 as of the date of the accident. We will reverse the order of Judge Moorman and affirm the order of Chief Judge Carter.

The general presumption is that all statutes are to be given prospective application unless the manifest intention of the General Assembly was to the contrary. *Bell v. State,* 236 Md. 356, 204 A. 2d 54 (1964) ; *Gutman v. Safe Deposit and Trust Co.,* 198 Md. 39, 81 A. 2d 207 (1951) ; *Dashiell v. Holland Maide Candy Shops,* 171 Md. 72, 188 Atl. 29 (1936). This rule of construction is particularly applicable where the statute affects substantive rights as distinguished from procedural rights. *State Farm Mutual Auto. Ins. Co. v. Hearn,* 242 Md. 575, 219 A. 2d 820 (1966) ; *Janda v. General Motors Corp.,* 237 Md. 161, 205 A. 2d 228 (1964).[3] Likewise, the general rule is as applicable to amendments as it is to original enactments. *State Tax Commission v. Potomac Electric Power Co.,* 182 Md. 111, 32 A. 2d 382 (1943). We need not, however, rely only on the general rule, for the cardinal rule of statutory construction is that the courts should ascertain the legislative intent (of which there is ample evidence in this case) and give that intention effect. *Domain v. Bosley,* 242 Md. 1, 7, 217 A. 2d 555, 559 (1966).

Considering Chapter 81 as a whole and the circumstances surrounding its enactment, particularly the affinity between the law relating to financial responsibility and that concerning unsatisfied claims and judgments, it is apparent to us that the legislature intended the amendment to apply prospectively rather than retrospectively. The existence of the relationship was recognized by us in *Simpler v. State use of Boyd,* 223 Md. 456, 463, 165 A. 2d 464, 468 (1960). Ever since the inception of the UC&J Fund the maximum amount of its liability has been the same as the minimum insurance coverage required.

In 1963 Governor J. Millard Tawes vetoed a bill increasing the minimum amount of insurance coverage under the law re-

---

**3.** In Melvin v. Rembert, 259 F. Supp. 33, the District Court of Maryland characterized § 167A of Article 66½, permitting the Commissioner of Motor Vehicles to be made a party defendant when the whereabouts of the uninsured motorist cannot be ascertained, as substantive and held that it was not retrospective.

lating to financial responsibility because it did not increase the maximum amount payable out of the fund. As a result, the title of the present amendment makes it clear that it is still the policy of the state to maintain the relationship between the concurrent parts of the statute. The title of the amendment—which may be referred to for the purpose of ascertaining legislative intent, *Eisler v. Eastern States Corp.*, 186 Md. 251, 256, 46 A. 2d 630, 632 (1946)—states that its purpose is "to increase the mandatory minimum amounts of financial responsibility required for bodily injuries under the motor vehicle laws and making *corresponding changes* [emphasis ours] in the amounts payable for bodily injuries under the Unsatisfied Claim and Judgment Fund Law."

Taking into account the significance of the title as well as the rule of construction that all parts of a statute are to be reconciled if possible, *Thomas v. Police Commissioner*, 211 Md. 357, 361, 127 A. 2d 625, 627 (1956) and *Pittman v. Housing Authority*, 180 Md. 457, 464, 25 A. 2d 466, 469 (1942), the two parts of the law must be considered together. If this were not done, the inconsistent results that would flow from an interpretation to the contrary would be unfair.

Section 151(d) of Article 66½ requires the fund board to calculate on December 30th in each year the probable amount of funds needed for the ensuing license registration year which begins on April 1st and, if the funds estimated to be on hand as of the latter date are deemed to be insufficient, the Commissioner of Motor Vehicles, on the recommendation of the board, assesses the deficiency against insurers authorized to write automobile liability insurance and against uninsured motorists who register their vehicles at the beginning of or during the next registration year. Chapter 81 was approved April 7, 1964, but did not take effect until April 1, 1965. This, we think, signifies that the principle reason for giving the amendment prospective effect was to afford the board and commissioner an opportunity to calculate the additional funds needed and to assess the estimated deficiency. If not, then it is obvious that giving the amendment a retrospective effect so as to apply the increased liability to injuries suffered prior to April 1, 1965, would result in making those assessed on De-

cember 30, 1964, unjustly liable for deficiencies from prior years for injuries inflicted before April 1, 1965, which had not been theretofore finally adjudicated. It is unlikely that this was the legislative intent.

Furthermore, if Chapter 81 is given retrospective effect, motorists carrying the minimum insurance coverage required under the financial responsibility law would have been uninsured after April 1, 1965, as to accidents occurring before that date because the liability of an insurer is limited to the coverage in effect at the time of the accident. *National Indemnity Co. v. Simmons,* 230 Md. 234, 243, 186 A. 2d 595, 600 (1962) ; *Parks v. Williams,* 249 Md. 600, 241 A. 2d 400 (1967). In such a situation if an injured person recovered a judgment in excess of $10000 against an insured motorist carrying a 10000/20000/3000 coverage at the time of an accident that occurred before April 1, 1965, but for which judgment was recovered after that date, the injured person apparently would recover $10000 from the insurer and the difference up to $15000 from the fund. Again, it is not likely that this was the legislative intent. Moreover, since the liability of an insurer cannot be increased after an accident, the amount of $10000 recoverable under the minimum coverage of the prior *responsibility* law for pre-April 1-injuries and the amount of $15000 recoverable under the amended *fund* law would be different. This would destroy the equality between the law relating to financial responsibility and that concerning unsatisfied claims and judgments.

Statutes and amendments imposing, removing or changing a monetary limitation on recovery for personal injuries or death are generally held to be prospective only. See *Monson v. Nelson,* 145 N. W. 2d 892 (N. D. 1966). *Cf. State v. A/S Nye Kristianborg,* 84 F. Supp. 775 (D. Md. 1949). See also generally 98 A.L.R. 2d 1105.

Other than this, certain parts of the amendment, for example § 162(a), providing that the "maximum amounts payable from the fund *shall be* [emphasis ours] fifteen thousand dollars," is expressed in the future tense which connotes prospective rather than retrospective application. See *Beard v. State,* 74 Md. 130, 133, 21 Atl. 700, 701 (1891). The fact that Chapter 81 was to take effect on a future date also indicates that it was intended

to be prospective. 82 C.J.S., Statutes, § 413. Moreover, the future date was a time other than that prescribed by § 31 of Article III of the Constitution of Maryland for the conventional effective date for laws passed by the General Assembly.

Finally, the citation of *Beechwood Coal Co. v. Lucas,* 215 Md. 248, 137 A. 2d 680 (1958), for the proposition that the only claim an injured person could assert after April 1, 1965, for rights which had arisen prior to that date, is that given by § 162(a) as amended, is of no avail because all that *Beechwood* decided as to retrospectivity was that the legislature *may constitutionally* apply a statute retrospectively even as to substantive rights as long as the statute does not interfere with vested rights. In this instance we think it is clear that the legislature did not intend the amendment to be applied retrospectively. The fact that the legislature may revoke certain rights does not necessarily mean that it has done so.

We hold, since the amendments are inapplicable to the accidents in this case, that the maximum limits of $10000, less the statutory deduction, apply.

*Case No. 214/67*
*Judgments in favor of Frances and Lewis Bowman for $14900 each reversed and reentered for $9900 each; costs to be paid by the appellees.*

*Case No. 297/67*
*Judgment in favor of Shirley Bramble for $9900 affirmed; costs to be paid by the appellant.*